UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN S. OSTERHOUDT,

    Plaintiff,

v.                                             CASE No. 8:10-CV-336-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

# O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

## I.

The plaintiff, who was twenty-four years old at the time of the administrative hearing and who has a ninth grade education, has worked as a retail store clerk, certified nursing assistant, factory worker, telemarketer, recruiter of households for TV ratings, and, most recently, as a laundry

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

attendant at a nursing home (Tr. 25, 27, 131). He filed a claim for supplemental security income payments, alleging that he became disabled due to anxiety, bipolar disorder, obsessive-compulsive disorder, chronic depression, and attention deficit hyperactivity disorder (ADHD) (Tr. 122). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of bipolar disorder, ADHD, panic disorder with agoraphobia, and borderline personality disorder (Tr. 15). The law judge concluded that, as a result of these impairments, the plaintiff has the residual functional capacity to perform medium work, but he should "avoid ladders, unprotected heights and operation of heavy moving machinery" (Tr. 17). The law judge further found that the plaintiff is "limited to performing simple tasks in a low stress work environment where he will have limited contact with the public or co-workers" (id.). Based upon the testimony of a vocational expert, the law judge found that, despite the plaintiff's limitations, he could return to past work as a laundry laborer (Tr. 20). Alternatively, the law judge found that there are jobs existing in significant numbers in the national economy that the

plaintiff could perform, such as cleaner II, order picker, warehouse checker, and small products assembler (Tr. 20-21). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 21). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.

405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence,

but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen. 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff predicates his claim for benefits on mental impairments. and the law judge found that the plaintiff had severe impairments of bipolar disorder, attention deficit hyperactivity disorder, panic disorder with agoraphobia, and borderline personality disorder (Tr. 15). The law judge concluded that these impairments did not prevent the plaintiff from returning to past work as a laundry laborer, as well as performing certain other jobs that exist in the national economy (Tr. 20-21).

The plaintiff attacks the law judge's decision on two grounds. First, the plaintiff contends that the law judge improperly rejected the opinions of treating physicians in favor of the opinion of a consultative examiner. In connection with this argument, the plaintiff also claims that the opinion of the consultative examiner was outdated, and that, therefore, the

law judge should have ordered a second consultative examination. For his second issue, the plaintiff asserts that the law judge erred in finding that he was non-compliant with prescribed treatment.

The plaintiff's issues are based solely upon his mental impairments. However, in his summary of the case, the plaintiff states that the law judge "ignored the evidence of [his] physical impairments, including evidence of low back pain documented by Dr. [Mouna] Bacha" (Doc. 14, p. 2). Any claim predicated on a physical impairment is foreclosed by the scheduling Order entered in this case (Doc. 11). The scheduling Order requires the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support his challenges with "citations to the record of the pertinent facts..." (id., p. 2). The plaintiff has not satisfied these requirements with respect to any physical impairment. Accordingly, any challenge based upon a physical impairment is waived.

Turning to the two (or three) arguments relating to mental impairments, the plaintiff's contention that the law judge rejected the treating

-6-

source opinions in favor of the opinion of the consultative examiner lacks merit for several reasons.

In the first place, while the general principle is that opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight, that principle does not apply here. The plaintiff on this point relies upon assessments from providers at Directions for Mental Health ("Directions"). However, those providers were ARNPs. Under the regulations, an ARNP is not an acceptable medical source. 20 C.F.R. 416.913(a). Accordingly, an ARNP's opinion is not entitled to the same weight as afforded the opinion of a treating psychiatrist or psychologist. Cf. Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998). The plaintiff therefore cannot rely upon the principle regarding the weight to be given to the opinion of a treating physician.

Furthermore, although the law judge could have discounted the treatment notes of the ARNPs, in fact he did not do so. Rather, as the Commissioner points out, the law judge stated that he gave "significant weight" both to the opinion of Dr. Michael Greenberg, the consultative examiner, and to the treatment notes of the ARNPs from Directions for

-7-

Mental Health. the plaintiff's treating mental health provider (Tr. 20).  He reasoned that "[t]his is because both of these sources consistently offered similar opinions as to the claimant's functioning" (id.).  In other words, the plaintiff is incorrect to argue that the law judge gave greater weight to the opinion of the consultative examiner than to the treating mental health providers; the law judge gave substantial weight to both sources.

The plaintiff disagrees with the assessment that they offered similar opinions, asserting that "[t]he limitations assigned by Directions were more severe than those given by Dr. Greenberg" (Doc. 14, p. 9). Significantly, contrary to the scheduling Order, the plaintiff does not point to any specific evidence in the record demonstrating that the Directions' staff assessed greater functional limitations than Dr. Greenberg.   In fact, the record contradicts the plaintiff's contention.

Dr. Greenberg, a psychologist, examined the plaintiff on July 12, 2007 (Tr. 273). The plaintiff reported to Dr. Greenberg that he was diagnosed with bipolar disorder, and also suffered from ADHD, intermittent mood swings, and anxiety attacks (Tr. 273-74). Dr. Greenberg observed that the plaintiff was alert, fully oriented, and exhibited no delusions, hallucinations,

thought disorder, or psychosis (Tr. 275). He additionally noted the following with respect to the plaintiff's mental abilities:

> He was able to recall one of three common objects after five minutes. His auditory attention and concentration were low average. His fund of information was in the borderline range. His arithmetic ability was low average, while his abstract thinking and verbal reasoning were in the average range.

Dr. Greenberg, therefore, noted diagnoses of bipolar disorder, panic disorder with agoraphobia, ADHD, and borderline personality disorder (id.). He further assessed a Global Assessment of Functioning (GAF) score of 53 (id.). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision). p. 34. A rating of 51-60 reflects "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)" (id.). While Dr. Greenberg commented on the plaintiff's ability to handle funds and his ability to carry out activities of daily living, he did not set forth any functional limitations.

The plaintiff began receiving mental health treatment at Directions in December 2006 (Tr. 383). At that time, Jacqueline Harrison, ARNP, assessed a GAF score of 54 (Tr. 384). Ms. Harrison assessed the same score upon the plaintiff's return in January 2007, and increased his score to 55 in March 2007 (Tr. 381, 382). Over the following two and a half years, Susan Martinieri, ARNP, assessed GAF scores ranging from a high of 63 in October 2007 (Tr. 376), which is in the mild range, to a low of 52 in May 2008 (Tr. 397). Between May 2008 and the last documented visit in July 2009, the plaintiff's GAF remained in the mid- to upper-fifties (Tr. 405, 406, 417, 419, 423, 433, 435, 437). The GAF scores are the ARNPs' only indication of their assessment of the degree of the plaintiff's mental impairment. No one at Directions stated any functional limitations for the plaintiff.

In short, neither Dr. Greenberg, nor the ARNPs at Directions, opined any functional limitations due to the plaintiff's mental impairments. Consequently, there is no basis for the assertion that "[t]he limitations assigned by Directions were more severe than those given by Dr. Greenberg."

While both Dr. Greenberg and the ARNPs set forth GAF scores, such scores do not constitute functional limitations. At most, the score reflects. along with symptom severity, an individual's level of functioning. DSM-IV-TR, pp. 32-33. It does not, however, specify functional restrictions due to mental impairments. Notably, the Commissioner has declined to endorse the use of GAF scores in disability determinations. <u>Wind</u> v. <u>Barnhart</u>, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005)(unpub. dec.).

Nevertheless. while the GAF scores in this case do not state functional mental limitations, they do provide a basis for comparing Dr. Greenberg's assessment of the severity of the plaintiff's symptoms with the assessment by the ARNPs from Directions. That comparison shows that the plaintiff is wrong to claim that the ARNPs' assessment was of a condition that was more severe than Dr. Greenberg thought. As indicated, Dr. Greenberg assessed a GAF score of 53. denoting moderate symptoms or moderate difficulty in social, occupational, or school functioning. Similarly, the ARNPs assessed GAF scores ranging from 52 to 63 over two and a half years of treating the plaintiff. This range of scores denotes mild to moderate symptoms or no more than moderate difficulty in social, occupational, or

school functioning. Thus, the law judge's finding that Dr. Greenberg and the Directions staff "consistently offered similar opinions as to the claimant's functioning" is amply supported by substantial evidence (Tr. 20).

Further, the plaintiff is incorrect to assert that the law judge "erroneously attempted to substitute a greater RFC [residual functional capacity] based on a consultative evaluation rather than a more restrictive RFC from the claimant's own treating medical source" (Doc. 14, p. 9). Since the ARNPs did not set forth any functional limitations, they obviously could not, and did not, opine about the plaintiff's residual functional capacity.

The only functional limitations in the record are from two nonexamining reviewing psychologists (Tr. 276, 290, 307, 311). The law judge's evaluation of the plaintiff's functional limitations in the areas of activities of daily living, social functioning, and concentration, persistence, or pace are more restrictive than the two psychological evaluations (compare Tr. 16 with Tr. 286, 321). Thus, the law judge did not accept those evaluations uncritically.

In sum, the law judge did not give greater, or inappropriate, weight to the opinion of Dr. Greenberg. Further, the plaintiff has failed to

-12-

show that the law judge erroneously gave significant weight to both the assessments of Dr. Greenberg and the ARNPs from Directions.

The plaintiff makes the related contention that the law judge should have ordered a follow-up consultative exam or called a medical expert to testify at the hearing (Doc. 14, p. 10). That contention is also without merit.

The regulations state that a "consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on the [plaintiff's] claim." 20 C.F.R. 416.919a(b). Here, the Social Security Administration had already purchased a consultative examination from Dr. Greenberg. A law judge need not seek additional expert testimony, including a consultative exam, if the record is sufficiently developed to make a disability determination. Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007)(unpub. dec.).

In this case, the law judge had a sufficiently developed record for the time period between Dr. Greenberg's July 2007 consultative exam and the August 2009 administrative hearing. The plaintiff submitted, and the law judge considered, notes from his treating nurse practitioners at Directions

-13-

from December 2006 to July 2009. The notes contained comments reflecting the plaintiff's on-going status. At times, those comments contradicted the plaintiff's claim of debilitating mental impairments. Thus, the notes of October 2, 2007, stated that the plaintiff was working 40-60 hours (Tr. 329); the notes of June 3, 2008, indicate that the plaintiff has been working at his current job for three months (Tr. 405); the notes of August 5, 2008, say that the plaintiff has been attending anxiety and gay/lesbian support groups (Tr. 406); and the notes of September 2, 2008, comment that the plaintiff has been doing glass engraving for extra income and drawing for recreation (Tr. 419). These notes would seemingly give the law judge a better picture of the plaintiff's condition than a one-time examination.

Furthermore, as previously indicated, and contrary to the plaintiff's assertion that he "suffered a severe decline in his medical condition" after Dr. Greenberg examined him (Doc. 14, p. 10), the Directions' notes, as reflected in the GAF scores, indicate that the plaintiff's functional impairment remained only moderate in the two years leading up to the administrative hearing. Thus, the scores show that there was no significant change in the plaintiff's condition which would render Dr. Greenberg's prior

assessment outdated.   Under these circumstances, the law judge could reasonably conclude that the medical evidence was sufficient to permit a finding regarding disability.

Further, plaintiff's counsel did not ask the law judge either before, or at the hearing (Tr. 24-42), to consult with a medical expert or to order a second consultative examination.  Plainly, before the adverse ruling was rendered, he did not think a further psychological evaluation was warranted.  Consequently, the law judge did not err because he did not obtain an additional psychological evaluation.

For his final argument, the plaintiff contends that the law judge determined that he was noncompliant with prescribed treatment and that this determination was in violation of Social Security Ruling 82-59 (Doc. 14, p. 11).  This contention is baseless because the law judge did not make any such determination.

The law judge concluded that "the evidence tends to show that when he is taking his medications compliantly as ordered, his mental symptoms are fairly well controlled" (Tr. 19).  This was simply a statement that the plaintiff's mental impairments were controlled by medication.  There

-15-

was no further statement to the effect that the plaintiff was disabled because he fails to take his medicine.

The plaintiff attempts to make something of the comment by the law judge, who noted that. on one occasion, the plaintiff reported that he was having problems at work and was found to have failed to comply with orders to increase his medication dose (Doc. 14, p. 11). However, the law judge further stated that notes from several subsequent appointments indicated that the plaintiff was compliantly taking his medication and his GAF score had correspondingly reflected only mild functional impairment during that period (Tr. 19).

Moreover, the notes from Directions regularly indicate that the plaintiff is compliant with medications (see, e.g., Tr. 305, 387, 388, 408, 417, 423, 432, 435, 437). Consequently, there is no basis in the record for a finding that the plaintiff was noncompliant with his medications, and the law judge made no such finding. In other words, the premise for this argument is mistaken.

It is appropriate to add that the notes also support the law judge's conclusion that the plaintiff's impairments are fairly well-controlled by

medications.  Thus, there are comments that the plaintiff is stable on his

medications (Tr. 386, 416).  Of course, the plaintiff's stability on medications

is reflected further by the small deviation in his GAF scores.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby AFFIRMED.  The

Clerk shall enter judgment in accordance with this Order and CLOSE this

case.

DONE and ORDERED at Tampa, Florida, this _14th_ day of

January, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE